UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WEISER-BROWN OPERATING CO., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-10-2538 |
| | § | |
| ST. PAUL SURPLUS LINES INSURANCE, | § | |
| | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Pending before the Court are Plaintiff's Motion for Leave to file Amended Complaint (Doc. No. 44) and Defendant's two Motions for Summary Judgment (Doc. Nos. 36, 37). After considering the motions, all responses thereto, and the applicable law, the Court finds that Plaintiff's motion for leave must be GRANTED. Defendant's Motions for Summary Judgment both must be DENIED.

I.   **BACKGROUND**[1]

Plaintiff Weiser-Brown Operating Company ("Weiser-Brown" or "Plaintiff") is the operator of the Viking No. 1 Well (the "Well"), located in Lavaca County, Texas. (Doc. No. 4, "Pl. Compl." ¶ 6.) Defendant St. Paul Surplus Lines Insurance Company ("St. Paul" or "Defendant") issued a control of well insurance policy to Weiser-Brown

---

[1] These facts, drawn from Plaintiff's Second Amended Complaint (Doc. No. 4) and the evidence submitted by both parties in connection with Defendant's Motions for Summary Judgment, are undisputed unless otherwise indicated.

(the "Policy") with a policy period of December 13, 2007 through December 13, 2008. (*Id.* ¶ 7.)

Weiser-Brown alleges that, on August 13, 2008, it suffered from an "underground loss of control" while drilling the Well. (*Id.* ¶ 9.) Weiser-Brown alleges, and St. Paul disputes, that this event was a covered occurrence under the Policy. (*Id.* ¶¶ 9-14.) Weiser-Brown also alleges that it gave notice of loss to St. Paul on August 15, 2008. (Doc. No. 39, Ex. B, "Affidavit of W. Talbot," ¶ 4.)[2] After taking corrective safety measures, including sealing the Well, Weiser-Brown commenced drilling a "sidetrack" near the original Well. (*Id.* ¶¶ 10-11.) A sidetrack reuses the stable top portion of an original well bore before veering off to drill around the problem encountered in the original hole. (Doc. No. 40 at 3.) During the drilling of the sidetrack, Weiser-Brown experienced a second "loss of control," which the Complaint alleges is a covered occurrence under the policy. (*Id.* ¶ 12.)[3] According to St. Paul, Weiser-Brown did not give notice of these events until March 5, 2009. (Doc. No. 36, Ex. 1.)

St. Paul began investigating the alleged well control incidents on or about March 6, 2009. (Doc. No. 36, Ex. 2.) St. Paul's appointed loss adjuster, B.C. Johnston & Associates ("Johnston"), immediately requested documents and information from Weiser-Brown to determine the causes and extent of the claimed losses. (Doc. No. 36, Ex. 3.) In June 2009, Johnston recommended that St. Paul consult David Watson, a petroleum engineer, to further review information regarding the cause and/or nature of

---

[2] In its Reply (Doc. No. 43), St. Paul seeks to strike this paragraph as containing inadmissible hearsay. However, as the Court does not rely upon the statements made in this paragraph, and cites to the paragraph only to characterize Weiser-Brown's contentions, it does not rule on St. Paul's Motion to Strike.
[3] As discussed below, Weiser-Brown's motion for leave to amend seeks to remove the assertion that this second loss of control was a covered occurrence.

the alleged well control incidents. (Doc. No. 39, Ex. C.) On September 29, 2009, Johnston provided Weiser-Brown with Mr. Watson's report, wherein Mr. Watson concluded that "the available evidence does not demonstrate an underground blowout in either the original or the sidetrack wellbore." (Doc. No. 36, Ex. 4.) At or around the same time, St. Paul invited Weiser-Brown to submit additional information in support of its claim that one or more underground blowouts had occurred. (*Id.*)

On April 21, 2010, St. Paul again sent Mr. Watson's report to Weiser-Brown, and again requested Weiser-Brown's comments. (Doc. No. 36, Ex. 5.) On April 26, 2010, Weiser-Brown advised St. Paul that it was studying Mr. Watson's report and that would respond to the report shortly. (Doc. No. 36, Ex. 6.) On June 7, 2010, Weiser-Brown wrote to St. Paul in response to Mr. Watson's report, providing information developed by its own engineers. (Doc. No. 36, Ex. 7.) On June 23, 2010, St. Paul advised Weiser-Brown that its comments were forwarded to Mr. Watson, and that a supplemental report would be issued. (Doc. No. 36, Ex. 8.) On July 16, 2010, before St. Paul provided any supplemental report, Weiser-Brown filed this lawsuit asserting claims for breach of contract, attorneys' fees, and late payment penalties. Weiser-Brown amended its Complaint on July 19, 2010, and again on July 23, 2010, without altering its causes of action. (Doc. Nos. 2, 4.) Trial is set in this case for February 21, 2012. (Doc. No. 32.)

St. Paul moves for summary judgment on Plaintiff's claims for breach of contract, attorneys' fees, and late payment penalties. (Doc. No. 36, "First Motion for Summary Judgment.") St. Paul also moves for partial summary judgment on Plaintiff's apparent request for reimbursement of casing that was used to address one of the covered

3

occurrences.[4] (Doc. No. 37, "Second Motion for Summary Judgment.") Weiser-Brown moves for leave to amend its Complaint to remove claims regarding a second covered occurrence, and to add claims against St. Paul for acting in bad faith.

## II.    LEGAL STANDARDS

### A.  Amending Pleadings

Federal Rule of Civil Procedure 15(a) provides that courts should freely grant leave to amend when justice so requires. Fed. R. Civ. P. 15(a). A party may amend its pleadings once as a matter of course. Fed. R. Civ. P. 15(a)(1). Thereafter, pleadings may be amended "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). In determining whether to grant leave, courts may consider factors such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Overseas Inns S.A. PA. v. United States*, 911 F.2d 1146, 1150–51 (5th Cir. 1990) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In the absence of any of these or similar reasons, leave should be "freely given." *Foman*, 371 U.S. at 182; *see also* Fed. R. Civ. P. 15(a)(2).

### B.  Summary Judgment

To grant summary judgment, the Court must find that the pleadings and evidence show that no genuine issue of material fact exists, and therefore the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The party moving for summary judgment must demonstrate the absence of any genuine issue of material fact; however, the party need not negate the elements of the nonmovant's case. *Little v. Liquid Air Corp.*, 37 F.3d

---

[4] As discussed below, this apparent "request" was not made in Plaintiff's Complaint, nor has the Court seen any document in which Plaintiff makes such a request.

1069, 1075 (5th Cir. 1997). If the moving party meets this burden, the nonmoving party must then go beyond the pleadings to find specific facts showing there is a genuine issue for trial. *Id.* "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Texas*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted).

Factual controversies should be resolved in favor of the nonmoving party. *Liquid Air Corp.*, 37 F.3d at 1075. However, "summary judgment is appropriate in *any* case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Id.* at 1076 (internal quotations omitted). Importantly, "[t]he nonmovant cannot satisfy his summary judgment burden with conclusional allegations, unsubstantiated assertions, or only a scintilla of evidence." *Diaz v. Superior Energy Servs., LLC*, 341 F. App'x 26, 28 (5th Cir. 2009) (citation omitted). The Court should not, in the absence of proof, assume that the nonmoving party could or would provide the necessary facts. *Liquid Air Corp.*, 37 F.3d at 1075.

### III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

Weiser-Brown seeks to amend its Complaint to withdraw one claim, and to add two new causes of action, including breach of the duty of good faith and fair dealing and breach of Chapter 541 of the Texas Insurance Code.[5]

#### A. Sidetrack Well

Weiser-Brown asserts that it has learned, since commencing this suit, that the well-control problems experienced by the sidetrack well do not meet the Policy's

---

[5] In Response to Plaintiff's motion, St. Paul indicates that it believes Plaintiff is adding unspecified claims for intentional torts and gross negligence. The Court does not read Plaintiff's proposed Amended Complaint to add such claims. Rather, the Court reads the reference to knowledge and negligence to refer to Plaintiff's claim for breach of the duty of good faith and fair dealing.

definition of a separate occurrence of an out of control well, as would be required for coverage. With this portion of its request for leave to amend, Plaintiff is seeking to withdraw its claim as to the sidetrack well. Defendant does not assert, and the Court cannot find, that an amendment of this sort is futile, would cause undue delay, or evidences bad faith or dilatory motive. Indeed, such a limitation on Plaintiff's claims can only benefit St. Paul. As a late amendment of this sort will not prejudice Defendant or cause delay, the Court allows it.

### B. Bad Faith

Weiser-Brown also seeks to add bad faith claims, and urges that the importance of these claims became apparent during St. Paul's corporate deposition on November 17 and through its First Motion for Summary Judgment filed on November 23. Weiser-Brown points to two issues raised in the deposition and the motion that it believes evidence St. Paul's bad faith: (1) St. Paul's contention that Weiser-Brown did not provide notice of loss until March 2009, seven months after the loss; and (2) St. Paul's contention that Weiser-Brown has yet to provide St. Paul with satisfactory proof of ownership of the Well.

#### 1. Bad faith claim regarding St. Paul's assertion that Weiser-Brown did not provide timely notice of loss

St. Paul asserts, in its First Motion for Summary Judgment, that Weiser-Brown failed to give notice of loss until March 2009, seven months after the alleged incident. (Doc. No. 36 at 2.) Dale Reed, serving as St. Paul's corporate representative, also made this assertion at his November 17 deposition, and indicated that this late notice was one

reason that St. Paul was denying coverage. (Doc. No. 44, Ex. F, "Deposition of Dale Reed," at 53.)

In support of its argument that St. Paul's "late notice" justification for denial of coverage is made in bad faith, Weiser-Brown points to an email from St. Paul's own file notes which shows that Weiser-Brown's insurance broker gave notice of loss on August 15, 2008. (Doc. No. 44, Ex. F at 10.)

### 2. St. Paul's assertion that Weiser-Brown has not provided satisfactory proof of ownership

Another basis for St. Paul's denial of coverage is an alleged concern regarding the part ownership of the Well by a company called "Jolen Production" or "Jolen Operating Company" ("Jolen"). In its First Motion for Summary Judgment, St. Paul contends that Weiser-Brown's claim for late payment is premature because Weiser-Brown has not provided sufficient proof of ownership in the Well. (Doc. No. 36 at 7.) St. Paul indicates that its concerns regarding Well ownership arise out of Jolen's submission of an insurance claim in which Jolen asserts a 5% insurable ownership interest in the Well. (*Id.*)

Weiser-Brown urges that this ownership concern is a bad faith basis for disputing Weiser-Brown's prompt payment claim. In support of its bad faith allegation, Weiser-Brown points to a letter, sent by St. Paul in January 2010, which indicates St. Paul's awareness that (1) Jolen was not claiming a separate or competing interest in the Well, and (2) Weiser-Brown carried insurance coverage at 100% of the Well. (Doc. No. 44, Ex. E.) Weiser-Brown argues that St. Paul's clear understanding of Weiser-Brown's Well

ownership, as reflected in this letter, renders "insufficient proof of ownership" a bad faith justification for denial of coverage.

### 3. St. Paul's arguments against granting leave

St. Paul opposes Weiser-Brown's motion for the following reasons: (1) Weiser-Brown was aware of the facts supporting its new claims when it filed its Complaint; (2) the new claims that Weiser-Brown seeks to add fail to state a claim; (3) to allow Weiser-Brown's new claims at this late date would prejudice St. Paul; and (4) the addition of new claims would impose additional discovery costs.

#### a. Undue delay

The Fifth Circuit has upheld, as within a district court's discretion, the decision to deny leave to amend when the matters sought to be added could have been raised initially. *See Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980). St. Paul argues that Weiser-Brown was aware of the facts supporting its new claims when it filed its Complaint, as the facts are based upon alleged conduct between 2009 and 2010. The Court disagrees. As Weiser-Brown indicates in its motion, the extent to which St. Paul is relying upon untimely notice of loss and insufficient proof of ownership was not clear until November 2011, and came out during a corporate deposition and through St. Paul's First Motion for Summary Judgment. The fact that Weiser-Brown received St. Paul's expert report in 2009, and interpreted that report as a denial of its claim, does not establish that Weiser-Brown knew the facts supporting its bad faith claims at that time. Indeed, Weiser-Brown alleges that it did not want to bring bad faith claims until bad faith was abundantly clear. Weiser-Brown asserts that this clarity came in November 2011.

The Court will not deny Plaintiff's motion for amendment on the basis that these claims could have been raised initially.

### b. Futility of amendment

It is within a district court's discretion to dismiss a motion to amend that is "frivolous or futile." *See Ayers v. Johnson*, 247 F. App'x 534, 535 (5th Cir. 2007) (quoting *Martin's Herend Imports, Inc. v. Diamond & Gem Trading U.S. of Am. Co.*, 195 F.3d 765, 771 (5th Cir. 1999)). The Fifth Circuit has interpreted "futility" in the context of Rule 15 to mean that "the amended complaint would fail to state a claim upon which relief could be granted." *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000). Therefore, to determine futility, a court must apply the same standard of legal sufficiency as applies under Rule 12(b)(6). *Id.*

Rule 12(b)(6) provides, "A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plausibility standard is not akin to a

"probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* A pleading need not contain detailed factual allegations, but must set forth more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted).

St. Paul argues that Weiser-Brown's new claims would fail under the applicable two-year statute of limitations. Tex. Civ. Prac. & Rem Code § 16.003 (2005); *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 827 (Tex. 1990). "A statute of limitations may support dismissal under Rule 12(b)(6) where it is evident from the plaintiff's pleadings that the action is barred and the pleadings fail to raise some basis for tolling or the like." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 366 (5th Cir.2003). The statute of limitations for Plaintiff's extra-contractual claims began to run at the date of denial of coverage. *Hudspeth v. Enterprise Life Ins. Co.*, __ S.W.3d __, 2011 WL 6013091, at *12 (Tex. App.—Houston [1st Dist.] Dec. 1, 2011). St. Paul contends that the statute of limitations should be calculated from the first date on which Plaintiff's contend that coverage was denied. Because the Court concludes, as discussed below, that coverage was not denied until August 2010, Plaintiff's new claims do not fall outside the statute of limitations.

St. Paul also argues that Weiser-Brown's new cause of action for negligent or grossly negligent claim handling is not recognized under Texas law, *Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997), and that its new tort claim is prohibited because the Complaint fails to plead facts showing additional damage beyond those related to breach of contract. *N. Cypress Med. Center Op. Co. Ltd. v. Gallagher Ben Servs., Inc.*, 2011 WL 5110456, at *4 (S.D. Tex. Oct. 24, 2011). The Court is unmoved by these arguments, as it does not read Weiser-Brown's proposed

10

complaint as asserting separate causes of action for negligent claim handling or commission of an intentional tort. Rather, the statement in Weiser-Brown's Complaint that St. Paul acted in an "intentional and/or grossly negligent manner" is under the header "Breach of the Duty of Good Faith and Fair Dealing." (Doc. No. 44, Ex. A at 4-5.) The Court reads Weiser-Brown's allegation as an attempt to assert the second element of the breach of the duty of good faith and fair dealing—namely, that the insurer knew or should have known that there was no reasonable basis for denying the claim or delaying payment. *Aranda v. Ins. Co. of N. Am.*, 748 S.W.2d 210, 213 (Tex. 1988).

Finally, St. Paul asserts that the new claims would be futile under *Higginbotham*, 103 F.3d at 459, which affirms that bad faith claims which show only a bona fide dispute regarding an insurer's liability on the contract do not state a claim under Texas law. The Court does not find that Plaintiff's claims show only a bona fide dispute. To the contrary, Plaintiff's new claims and the evidence submitted therewith indicate a denial of coverage by St. Paul for reasons which it knows to be invalid. St. Paul's contentions regarding futility of amendment do not counsel against granting Plaintiff's motion for leave to amend.

### c. Undue prejudice

In determining whether to grant a motion for leave to amend, district courts may consider undue prejudice to the opposing party. *Foman*, 371 U.S. at 182. St. Paul argues that allowing Weiser-Brown to add new claims so close to the end of discovery would unduly prejudice St. Paul. St. Paul asserts that the bad faith claims "have not been considered by St. Paul, and would require significant time in order to gather and analyze the facts in discovery and expert testimony necessary to defend them." (Doc. No. 47 at

6.) The Court cannot agree. Although the "bad faith" element of Weiser-Brown's proposed claims is new, the factual basis for it, as St. Paul itself has noted, is not. And while Weiser-Brown did not fully appreciate the bases on which St. Paul was justifying its denial of coverage until November 2011, St. Paul should have understood its own position much earlier. St. Paul is also entirely in control of the evidence related to these claims. Weiser-Brown has requested no additional discovery, and St. Paul has been unable to provide a detailed description of what additional discovery it would need. The Court is not convinced that additional discovery is needed at all. The Court finds that St. Paul is not unduly prejudiced by the addition of these claims, even at this late date.

### d. Additional costs

St. Paul asserts that Weiser-Brown's new claims will cause St. Paul to bear additional discovery costs. Because St. Paul has been unable to articulate precisely what additional discovery it would need, the Court cannot agree.

## IV. DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

St. Paul moves for summary judgment on Plaintiff's breach of contract and attorneys' fees claims, as well as its statutory claim regarding late payment. St. Paul also moves for partial summary judgment on Plaintiff's "casing" claim.

### A. Breach of Contract

Weiser-Brown alleges that St. Paul breached the insurance contract because it "refused to provide coverage" for covered losses. (Pl. Compl. ¶ 19.) St. Paul moves for summary judgment on the breach of contract claim on the basis that, at the time Weiser-Brown filed its Complaint, St. Paul had not yet denied coverage, and therefore could not have breached the insurance contract.

12

To prove a claim for breach of contract, Weiser-Brown must prove: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Mullins v. TestAmerica, Inc.*, 564 F.3d 386 (5th Cir. 2009) (quoting *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). In Texas, a first-party claim for breach of an insurance contract does not arise until or unless the insurer denies coverage. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990); *see also Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 514 (Tex. 1998) (claim accrues when coverage is denied); *Celtic Life Ins. Co. v. Coats*, 885 S.W.2d 96, 100 (Tex. 1994) (claim accrues when insurer "first denied coverage").

Weiser-Brown offers a number of arguments in response. Weiser-Brown does not contend that St. Paul sent a formal denial of coverage; rather, it asserts that denial of coverage can be implied, rather than explicit. Weiser-Brown argues that St. Paul denied coverage first when it declined to respond to Weiser-Brown's request to indicate its intent to honor its policy obligations; again when it asserted that the Well was never out of control; and yet again when it filed its Answer in this case.

### 1. Defendant's failure to respond to Plaintiff's request that it indicate its intent to honor its obligations under the policy

St. Paul does not dispute that an insurer can deny a claim without acting expressly, and Texas case law confirms that denial of an insurance claim can be implied. Indeed, "[w]hen ... there is no outright denial of a claim, the exact date of accrual of a cause of action becomes more difficult to ascertain and should be a question of fact to be

13

determined on a case-by-case basis." *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 n. 2 (Tex. 1990). While denial can be implied, evidence submitted by both parties makes clear that Defendant's failure to respond to Plaintiff's request was not an implied denial. The content of the parties' communications affirms St. Paul's argument that it was awaiting an adjustment report at the time Plaintiff's request was sent. As St. Paul was not yet sure whether it was going to deny the claim, its failure to respond to Plaintiff's request cannot be considered a denial of coverage.

### 2. Defendant's denial that the Well was out of control

Weiser-Brown argues that St. Paul also declined coverage when it sent letters to Jolen regarding the adjuster's determination that there had not been a covered well control event. On January 8, 2010, and again on March 30, 2010, St. Paul sent letters to Rhonda Carretero at Jolen denying that the Well was ever out of control and requesting any information supporting a contrary position. The letters inform Jolen that St. Paul was planning to close its file on the case if it did not receive such information from Jolen.

A letter requesting information for the purpose of adjustment cannot be seen as a denial of coverage. The letters to Jolen make clear that St. Paul had not reached a final decision on coverage when it sent them. If it had, it would not have requested information from Jolen supporting a contrary conclusion. The letters to Jolen cannot be considered a denial of coverage.

### 3. Defendant's Answer

Weiser-Brown argues that, even if St. Paul did not deny coverage prior to the lawsuit, St. Paul "specifically and unequivocally denied coverage when it filed its Answer and Affirmative Defenses" in this case. (Doc. No. 39 at 10-11.) In its Answer, St.

14

Paul states that "there is no coverage under Policy No. MU05509849 for the incident because the incident does not meet the definition of 'Well Out of Control' contained in the Policy." (Doc. No. 24 ¶ 26.) It also states that Plaintiff cannot recover on its claims because Plaintiff failed to timely provide information to St. Paul, failed to perform conditions precedent to coverage, and failed to report loss or damage as soon as practicable. (Doc. No. 24 ¶¶ 34-36.) Any lingering confusion about whether St. Paul denied coverage in the course of this lawsuit was put to rest at the hearing on January 12, 2012, when defense counsel admitted to the Court that St. Paul has now denied Plaintiff's clam. St. Paul's contention is that, because the claim had not been denied when Plaintiff's Complaint was filed, the cause of action for breach of contract had not accrued, and St. Paul is entitled to summary judgment.

Ultimately, whether this lawsuit was filed before or after St. Paul's denial of coverage is immaterial. In *Munoz v. State Farm Lloyds*, 2006 WL 89836, at *3 n.6 (S.D. Tex. Jan. 13, 2006) (rev'd on other grounds), the court held that the fact that a plaintiff initiated a lawsuit prior to the date that the insurance claim was rejected was irrelevant, since Defendant "did eventually deny the claim." Similarly, in this case, St. Paul admits that it now has denied Plaintiff's claim. St. Paul's argument that it had not yet denied coverage when Plaintiff filed its Complaint would have been far more relevant had it been asserted as part of a motion to dismiss, submitted prior to St. Paul's Answer denying coverage. At that point, Plaintiff's breach of contract claim might have been premature and subject to dismissal. However, as St. Paul admits that coverage now has been denied, the state of affairs at the time Plaintiff filed its Complaint is no longer relevant.

### B. Attorneys' Fees

15

In conjunction with its breach of contract claim, Weiser-Brown alleges that it is entitled to attorneys' fees under the Texas Civil Practice and Remedies Code, which provides, "A person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of the valid claim and costs, if the claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem Code § 38.001. To recover fees under the statute, Weiser-Brown must prevail on its breach of contract claim and must recover damages. *MBM Fin. Corp. v. Woodlands Oper. Co.*, 292 S.W.3d 660, 666 (Tex. 2009) (citing *Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 201 (Tex. 2004) (per curiam)). The basis for St. Paul's First Motion for Summary Judgment on attorneys' fees is that, if Plaintiff's breach of contract claim fails, then its attorneys' fees claim must also fail. As the Court concludes that a genuine issue of material fact remains on the breach of contract claim, it must deny summary judgment on the attorneys' fees claim.

### C. Claim for Late Payment

Weiser-Brown's Complaint alleges "late payment under applicable statutes," which appears to be an attempt to assert a claim under the prompt payment portion of the Texas Insurance Code. The Prompt Payment of Claims Act requires that an insurer accept or reject a claim not later than the 15th business day "after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." Tex. Ins. Code § 542.056(a). If the insurer delays payment of the claim more than 60 days "after receiving all items, statements, and forms reasonably requested and required," then the insurer may be liable for late payment. Tex. Ins. Code § 542.058(a). The insurance policy at issue in this case provides that St. Paul is not obligated to pay until (1) Weiser-

16

Brown provides satisfactory proof of interest, and (2) the claim is fully adjusted. (Doc. No. 36, Ex. 9 at 4.)

St. Paul argues that there are three reasons why it is entitled to summary judgment on Plaintiff's claim for late payment: (1) it has not received all documents required to secure final proof of loss, so the statute is not triggered; (2) Weiser-Brown has not provided satisfactory proof of loss as required by the policy, so St. Paul has no obligation to pay under the terms of the policy; and (3) the claim was not fully adjusted prior to the filing of this suit, so St. Paul has no obligation to pay under the terms of the policy.

### 1. Deadlines

Under the Texas Insurance Code, the deadlines for payment on a claim are triggered when the insured provides the insurer with the information and documentation necessary to establish a proof of loss and coverage. Tex. Ins. Code § 542.056(a); Tex. Ins. Code § 542.058(a). St. Paul argues that the deadline for its acceptance or rejection of Weiser-Brown's claim was never triggered, because Weiser-Brown failed to provide essential documentation and information before filing its Complaint. Specifically, St. Paul argues that Weiser-Brown failed to provide proof of its ownership interest in the well.

Weiser-Brown disputes St. Paul's purported confusion about ownership. As discussed above, Weiser-Brown asserts that St. Paul's letter to Jolen proves that St. Paul understood, as of January 2010, that (1) Jolen was only a 5% interest owner in the Well, and (2) Jolen was not claiming a separate or competing interest in the Well. (Doc. No. 39, Ex. 6.) The Court agrees that, at a minimum, this letter raises a genuine issue of material

17

fact as to whether Weiser-Brown provided St. Paul with all documents required to secure final proof of loss.

### 2. Proof of Loss

St. Paul argues that Weiser-Brown's failure to provide ownership documents not only renders its claim invalid under the text of the Prompt Pay Act, but also violates a term in the insurance policy stating that St. Paul is obligated to pay only after Weiser-Brown presents "satisfactory proof of interest." (Doc. No. 36, Ex. 9.) St. Paul argues that Weiser-Brown's failure to provide ownership documents removes St. Paul's obligation under the policy, and invalidates any claim for late payment. For the reasons discussed above, the Court finds that St. Paul's letter to Jolen raises a genuine issue of material fact as to whether Plaintiff complied with the terms of the policy and provided St. Paul with all documents required to indicate proof of interest.

### 3. Claim not Fully Adjusted

Finally, St. Paul argues that Weiser-Brown's claim was not fully adjusted at the time suit was filed, and that therefore there can be no claim for prompt payment. As discussed above, the Court finds St. Paul's focus on the status of the claim at the time of filing to be irrelevant to this summary judgment motion. It matters not whether the claim was fully adjusted when the Complaint was filed; what matters is that, as St. Paul now has agreed, coverage was denied in August 2010. It is clear that Plaintiff's claim has been adjusted. That it had not been at the time Plaintiff filed suit is of no relevance to the Court's summary judgment determination.

### D. Casing Claim

St. Paul moves for summary judgment on Weiser-Brown's request for coverage of "casing," which is material that Weiser-Brown allegedly used as part of its well-control operations in the sidetrack well. Weiser-Brown's request for coverage of casing was apparently made to St. Paul outside of the context of this lawsuit. This request has not been put before the Court, nor is "casing" referenced anywhere in Plaintiff's Complaint. St. Paul seems to suggest that, because casing is an aspect of Plaintiff's alleged damages, the claim may be adjudicated. The Court disagrees. This element of Plaintiff's damages has not been put before the Court, and may not be adjudicated in a motion for summary judgment.

V. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiff's motion must be **GRANTED**, and Defendant's motions must be **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 17th day of January, 2012.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE