UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| WEISER-BROWN OPERATING COMPANY, § § § Plaintiff, § § v. § § ST. PAUL SURPLUS LINES INSURANCE COMPANY, § § § Defendant. § | CIVIL ACTION NO. H-10-2538 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff Weiser-Brown Operating Company ("Weiser-Brown") was the operator of an exploratory well in Lavaca County, Texas, known as the Viking No. 1. On August 13, 2008, Weiser-Brown experienced a loss of control at the Viking No. 1. Weiser-Brown had a control of well policy (the "Insurance Agreement") with Defendant St. Paul Surplus Lines Insurance Company ("St. Paul"). Weiser-Brown brought this action against St. Paul, claiming that it had breached the Insurance Agreement and violated Texas's Prompt Payment of Claims Act.

Weiser-Brown's breach of contract claim was tried to a jury on September 4-7, 2012. The jury found in Weiser-Brown's favor and awarded $2,290,547.03 in damages.

At trial, the parties agreed that Weiser-Brown's claim under the Prompt Payment of Claims Act (the "Prompt Payment Claim") would be submitted to the Court for decision post-trial. (Doc. No. 98, at 762:5-16, 780:1-13.) St. Paul subsequently moved for judgment on partial findings on the Prompt Payment Claim. (Doc. No. 116.) Weiser-Brown filed a cross-motion for

1

judgment on the Prompt Payment Claim. (Doc. No. 117.) This order resolves the Prompt Payment Claim and the parties' respective motions for judgment on that claim.

In deciding this order, the Court has considered:

- The parties' live pleadings. (Doc. No. 49; Doc. No. 50.)
- The trial testimony of Robert Kachnik, claims adjuster for St. Paul; Suzanne Roberts, claims manager for St. Paul; and Nathan Caldwell, operations manager for Weiser-Brown.
- The exhibits admitted into evidence at trial.
- The jury's factual findings.
- The arguments and evidence advanced by the parties in their cross-motions for judgment and supporting memoranda on the Prompt Payment Claim.

Based on the record, the parties' submissions, the evidence, the arguments of counsel, and the applicable law, this Court finds in favor of Weiser-Brown. This Court enters the following findings of fact and conclusions of law in support of its judgment.

## I. FINDINGS OF FACT

1. Weiser-Brown is an Arkansas corporation and is engaged in the exploration and production of hydrocarbons.

2. Weiser-Brown, on behalf of itself and the non-operating interest owners, was the operator of an exploratory well known as the Viking No. 1 in Lavaca County, Texas.

3. St. Paul issued to Weiser-Brown an insurance policy bearing the number MU05509849 with a policy period of December 13, 2007 to December 13, 2008 (the "Insurance Agreement").

4. The Insurance Agreement states, in pertinent part, the following:

> [St. Paul] agrees, subject to the Combined Single Limit of Liability, terms and conditions of this Policy, to reimburse [Weiser-Brown] for actual costs and/or expenses incurred by [Weiser-Brown] . . . in regaining or

>    attempting to regain control of any and all Wells Insured which get out of control, including any other Well that gets out of control as a direct result of a Well Insured getting out of control, but only such costs and/or expenses incurred until the Well is brought under control as defined in Paragraph 2b of this Section IA . . .

(Pl. Trial Ex. 1.)

5. On August 13, 2008, Weiser-Brown experienced a loss of control at the Viking No. 1. The Viking No. 1 was a well "out of control," as that term is defined in the Insurance Agreement, and Weiser-Brown incurred costs and expenses attempting to regain control of the Viking No. 1. (Doc. No. 111, at 3-4.)

6. Weiser-Brown's broker notified St. Paul on March 4, 2009, that Weiser-Brown was interested in asserting a claim under the Insurance Agreement for the August 13, 2008 incident. (Pl. Trial Ex. 33.)

7. St. Paul acknowledged the claim and spoke with Weiser-Brown on March 6, 2009. (Def. Trial Ex. 63.)

8. Also on March 6, 2009, St. Paul assigned adjusters at BC Johnson Associates ("BC Johnson") to investigate the claim. (Def. Trial Ex. 63.)

9. On March 9, 2009; April 16, 2009; and June 9, 2009, a BC Johnson adjuster requested from Weiser-Brown information to adjust the claim. (Def. Trial Ex. 66; Def. Trial Ex. 76; Def. Trial Ex. 87.) Weiser-Brown complied with some, but not all, of the requests for information.

10. On September 29, 2009, a BC Johnson adjuster informed Weiser-Brown that an independent expert, David Watson, in a report dated September 24, 2009, had reached a preliminary conclusion that there had not been a "subsurface loss of control" on the Viking No. 1. The adjuster noted that Watson required some additional information from

3

> Weiser-Brown. The adjuster asked Weiser-Brown to provide this information, specifically:
>
>> 1. A mud log across the sidetrack wellbore.
>>
>> 2. All daily reports prepared by the mud logger.
>>
>> 3. All daily mud reports prepared by [Spirit Drilling Fluid's] mud engineer.
>
> Additionally, the adjuster asked Weiser-Brown to "advise" if it "believe[d] that the conclusions reached in the report are incorrect" and to "provide any information or documentation in support." (Def. Trial Ex. 109.)

11. By November 6, 2009, Weiser-Brown had complied with "most," but not all, of the requests for information in Watson's report. (Def. Trial Ex. 118; Def. Trial Ex. 141.)

12. On February 8, 2010, a BC Johnson adjuster informed Weiser-Brown that Watson's conclusions had not changed based on the additional information received from Weiser-Brown. He did not state that St. Paul, BC Johnson, or Watson required any additional information, or that previous requests for information had not been fulfilled. He again asked Weiser-Brown to "advise" if it "believe[d] that the conclusions reached in the report are incorrect" and to "provide any information or documentation in support." (Def. Trial Ex. 125.)

13. On March 30, 2010, and again on April 21, 2010, St. Paul wrote to Weiser-Brown that it had not received any response to Watson's report and that it would close the claim in 30 days if no response was received. (Def. Trial Ex. 130; Def. Trial Ex. 133.) Neither letter stated that St. Paul, BC Johnson, or Watson required any additional information, or that previous requests for information had not been fulfilled.

14. Weiser-Brown responded to Watson's report on June 7, 2010. (Def. Trial Ex. 135.)

15. On June 23, 2010, St. Paul informed Weiser-Brown that it had forwarded Weiser-Brown's response to Watson for his review and comment and would provide a copy of Watson's supplemental report "as soon as it is received." (Def. Trial Ex. 136.)

17. On July 16, 2010, Weiser-Brown filed this lawsuit.

## II. CONCLUSIONS OF LAW

1. To recover on its Prompt Payment Claim, Weiser-Brown must establish: (1) that it made a claim under an insurance policy; (2) that St. Paul is liable for the claim; and (3) that St. Paul failed to follow one or more sections of the Prompt Payment of Claims Act with respect to the claim. *Allstate Ins. Co. v. Bonner*, 51 S.W.3d 289, 291 (Tex. 2001), *modified on other grounds*, 2001 WL 1412951, at *1 (Tex. June 21, 2001).

2. Weiser-Brown, through its broker, asserted a claim under the Insurance Agreement on March 4, 2009. This communication from Weiser-Brown's broker satisfies the first element of the Prompt Payment Claim. It also constitutes "written notice of claim" under Texas Finance Code § 304.104, which governs the accrual of prejudgment interest.

3. Because the Viking No. 1 well was a well "out of control" on August 13, 2008, as that term is defined in the Insurance Agreement, St. Paul was liable for Weiser-Brown's claim. (Doc. No. 111, at 3-4.) This satisfies the second element of the Prompt Payment Claim.

4. Section 542.056(a) of the Prompt Payment of Claims Act requires an insurer to accept or reject a claim within 15 business days "after the date the insurer receives all items, statements, and forms required by the insurer to secure final proof of loss." TEX. INS. CODE § 542.056(a).

5. The 15-business-day deadline enacted by Section 542.056(a) begins to run when the insurer receives all information requested from the insured that is "necessary to [the insurer's] final determination concerning coverage." *Lee v. Catlin Specialty Ins. Co.*, 766 F. Supp. 2d 812, 826 (S.D. Tex. 2011). A request for information which is not necessary or required to make a determination of coverage is insufficient to prevent the 15-business-day deadline from running. *See id.*; *see also GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 835 (Tex. App.—Fort Worth 2008, no pet.) (distinguishing a request for information to "determine the extent of [the insured's] loss" from a request for information "to prove that [the insured] in fact suffered a loss," and finding that the plain language of the predecessor statute to Section 542.056(a) contemplated only the latter type of request); *Colonial County Mut. Ins. Co. v. Valdez*, 30 S.W.3d 514, 523 (Tex. App.—Corpus Christi 2000, no pet.) (finding unsatisfied information requests "were not required to secure final proof of loss" because they requested information "irrelevant to proving [that insured suffered a loss]").

6. St. Paul and its adjuster's repeated request for Weiser-Brown to respond to Watson's report—made in the September 29, 2009; February 8, 2010; March 30, 2010; and April 21, 2010 correspondence—was not a reasonable request for information necessary or required to determine whether the Viking No. 1 was a well "out of control." To find otherwise would encourage insurers to delay coverage determinations indefinitely by trading "preliminary" analyses with insureds. Such delay would be contrary to the express purpose of the Prompt Payment of Claims Act.

7. When an insured bears responsibility for the delay in the processing or payment of a claim, it is not entitled to the 18% statutory penalty in the Prompt Payment of Claims

Act. Put another way, an insurer cannot be penalized under the Prompt Payment of Claims Act for delays in the processing or payment of a claim which are attributable to the actions of the insured. *See Allison v. Fire Ins. Exchange*, 98 S.W.3d 227, 264 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.).

8. As of November 6, 2009, Weiser-Brown had submitted most—but not all—of the information requested by St. Paul and its adjuster which was necessary and required to make a determination of coverage. Despite this omission, St. Paul and its adjuster did not indicate in the February 8, 2010; March 30, 2010; or April 21, 2010 correspondence that any request for information remained unfulfilled or that determination of coverage was contingent upon receiving such information. Therefore, as of November 6, 2009, Weiser-Brown was in substantial compliance with all reasonable requests of St. Paul and its adjuster for information necessary and required to make a determination of coverage; any unfulfilled request for information was abandoned, waived, or withdrawn by St. Paul and its adjuster when they failed to reassert the request in later correspondence and was not "required" to "secure final proof of loss;" and the 18% statutory penalty can properly be assessed against St. Paul for any subsequent delay in the acceptance or rejection of the claim.

9. St. Paul did not accept or reject Weiser-Brown's claim within 15 business days of November 6, 2009, as required by the Prompt Payment of Claims Act. TEX. INS. CODE § 542.056(a). This satisfies the third element of the Prompt Payment Claim.

10. An insurer found to be in violation of any section of the Prompt Payment of Claims Act is liable to the insured for "interest on the amount of the claim at the rate of 18 percent a year." TEX. INS. CODE § 542.060(a).

11. The 18% penalty runs from the date the Prompt Payment of Claims Act was violated. *See State Farm Life Ins. Co. v. Martinez*, 174 S.W.3d 772, 790 (Tex. App.—Waco 2005), *rev'd on other grounds*, 216 S.W.3d 799 (Tex. 2007); *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 398 & 400 n.3 (Tex. App.—Dallas 2000, pet. denied).

11. Weiser-Brown is entitled to judgment in its favor on the Prompt Payment Claim. Its cross-motion for judgment is hereby **GRANTED**.

12. St. Paul is not entitled to judgment on partial findings on the Prompt Payment Claim. Its motion for judgment on partial findings is hereby **DENIED**.

13. The parties are instructed to confer and to submit an Agreed Judgment within ten days. The Agreed Judgment should reflect the Court's resolution of the Prompt Payment Claim and the jury's resolution of the breach of contract claim, thereby disposing of this case in full.

**IT IS SO ORDERED**.

**SIGNED** this 14th day of June, 2013.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE